☑ Original     ☐ Duplicate Original

# UNITED STATES DISTRICT COURT
### for the
Eastern District of Wisconsin

| | |
|---|---|
| In the Matter of the Search of ) <br> *(Briefly describe the property to be searched* <br> *or identify the person by name and address)* ) <br> a black iPhone with a black case, hereinafter identified as "Target <br> Telephone 1", and a silver Celero 5G smartphone, hereinafter identified as <br> "Target Telephone 2". Target Telephone 1 and Target Telephone 2 are <br> currently located at Waukesha County Drug Task Force, 1400 Northview <br> Road Waukesha, Wisconsin. | Case No. 25-1832M(NJ) |

## WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

To:     Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search and seizure of the following person or property located in the _____Eastern_____ District of _____Wisconsin_____ *(identify the person or describe the property to be searched and give its location)*:

Please see Attachment A.

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property described above, and that such search will reveal *(identify the person or describe the property to be seized)*:

Please see Attachment B.

**YOU ARE COMMANDED** to execute this warrant on or before _12/10/2025_ *(not to exceed 14 days)*
☐ in the daytime 6:00 a.m. to 10:00 p.m.     ☒ at any time in the day or night because good cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to _____Honorable Nancy Joseph_____ .
*(United States Magistrate Judge)*

☑ Pursuant to 18 U.S.C. § 3103a(b), I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)*
☐ for _____ days *(not to exceed 30)*   ☑ until, the facts justifying, the later specific date of _____05/25/2026_____ .



Date and time issued: _11/26/2025 @ 3:32 p.m._

*Judge's signature*

City and state: _____Milwaukee, Wisconsin_____     _____Honorable Nancy Joseph, U.S. Magistrate Judge_____
*Printed name and title*

| **Return** | | |
|---|---|---|
| Case No.: | Date and time warrant executed: | Copy of warrant and inventory left with: |

Inventory made in the presence of :

Inventory of the property taken and name(s) of any person(s) seized:

**Certification**

I declare under penalty of perjury that this inventory is correct and was returned along with the original warrant to the designated judge.

Date: _____

_____
*Executing officer's signature*

_____
*Printed name and title*

# ATTACHMENT A

The properties to be searched are described as follows:

a.  a black iPhone in a black case, hereinafter identified as the "**Target Telephone 1**";

b.  a silver Celero 5G smartphone, hereinafter identified as the **"Target Telephone 2"**.

**Target Telephone 1** and **Target Telephone 2** are currently located at Waukesha County Drug Task Force, 1400 Northview Road Waukesha, Wisconsin.

This warrant authorizes the forensic examination of **Target Telephone 1** and **Target Telephone 2** for the purpose of identifying the electronically stored information described in Attachment B.

1

# ATTACHMENT B

1.      All records on **Target Telephone 1** and **Target Telephone 2** are described in Attachment A that relate to violation of Title 21, United States Code, §§ 841(a)(1) (distribution of and possession with intent to distribute controlled substances) and 846 (conspiracy to distribute and possess with intent to distribute controlled substances), and violations of Title 18, United States Code, § 924(c) (Possession of a Firearm in Furtherance of Drug Trafficking), and involve BROWNLOW, since January 2024, including, but not limited to:

   a. lists of customers and related identifying information;

   b. types, amounts, and prices of drugs trafficked as well as dates, places, and amounts of specific transactions;

   c. any information related to co-conspirators and sources of drugs and firearms (including names, addresses, phone numbers, or any other identifying information);

   d. any information recording schedule or travel;

   e. all bank records, checks, credit card bills, account information, and other financial records;

   f. Photographs and/or videos depicting possession of drugs and/or firearms;

   g. Any evidence related to either the ownership, purchase, or possession of drugs and/or firearms;

1

h. Records of Internet activity, including browser history, search terms that the user entered into any Internet search engine, and records of user-typed web addresses; and

i. All data, communications, information, and records, in whatever form, have any tendency to establish the actual or intended physical location of its user, or that of any of their associates involved in criminal activity, as well as the physical location of **Target Telephone 1** and **Target Telephone 2**;

2. Evidence of user attribution showing who used or owned **Target Telephone 1** and **Target Telephone 2** at the time the things described in this warrant were created, edited, or deleted, such as logs, phonebooks, saved usernames and passwords, documents, and browsing history;

As used above, the terms "records" and "information" include all of the foregoing items of evidence in whatever form and by whatever means they may have been created or stored, including any form of computer or electronic storage (such as flash memory or other media that can store data) and any photographic form.

2

# UNITED STATES DISTRICT COURT
### for the
Eastern District of Wisconsin

In the Matter of the Search of
*(Briefly describe the property to be searched
or identify the person by name and address)*

a black iPhone with a black case, hereinafter identified as "Target Telephone 1",
and a silver Celero 5G smartphone, hereinafter identified as "Target Telephone 2".
Target Telephone 1 and Target Telephone 2 are currently located at Waukesha
County Drug Task Force, 1400 Northview Road Waukesha, Wisconsin.

)
)
)
)
)
)
)

Case No. 25-1832M(NJ)

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location):*

Please see Attachment A.

located in the _____Eastern_____ District of _____Wisconsin_____ , there is now concealed *(identify the person or describe the property to be seized)*:

Please see Attachment B.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

❑ contraband, fruits of crime, or other items illegally possessed;

❑ property designed for use, intended for use, or used in committing a crime;

❑ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. § 841(a)(1); 21 U.S.C. § 846; and 18 U.S.C. § 924(c) | Distribution of and Possession with Intent to Distribute Controlled Substances; Conspiracy to Distribute and Possess with Intent to Distribute Controlled Substances; and Possession of a Firearm in Furtherance of Drug Trafficking |

The application is based on these facts:

Please see Affidavit.

☑ Continued on the attached sheet.

☑ Delayed notice of __180__ days *(give exact ending date if more than 30 days:* __05/25/2026__ *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

MATTHEW VANELLS (Affiliate)  Digitally signed by MATTHEW VANELLS (Affiliate)
Date: 2025.11.25 12:15:41 -06'00'

*Applicant's signature*

Matthew Van Ells, Task Force Officer - DEA

*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by
_____telephone_____ *(specify reliable electronic means).*

Date: __11/26/2025__

*Judge's signature*

City and state: Milwaukee, Wisconsin

Honorable Nancy Joseph, U.S. Magistrate Judge

*Printed name and title*

## AFFIDAVIT IN SUPPORT OF AN
## APPLICATION UNDER RULE 41 FOR A
## WARRANT TO SEARCH

I, Matthew Van Ells, being first duly sworn, hereby depose and state as follows:

## INTRODUCTION AND AGENT BACKGROUND

1.      I am currently employed as an Acting Detective for the Waukesha County Sheriff's Department, and I am a Task Force Officer with the U.S. Drug Enforcement Administration (DEA), assigned to the Waukesha County Drug Task Force (WCDTF), which is involved in the investigation of narcotics trafficking. I have been a law enforcement officer for the past twenty-four years.

2.      I have received training in narcotics investigations, money laundering, financial investigations, and various methods that drug dealers use to conceal and launder the proceeds of their illicit drug trafficking enterprises. I have participated in numerous investigations involving violations of state and federal narcotics laws. I have worked with informants in the investigation of drug trafficking in the Milwaukee and Waukesha areas. I am familiar with the street names of various drugs in the Milwaukee and Waukesha areas, including marijuana, heroin, cocaine, MDMA, and more. I am also familiar with methods that are commonly used by drug dealers to package and prepare controlled substances for sale in the Milwaukee and Waukesha areas. I have participated or assisted in numerous federal and state search warrants for narcotic related offenses, which have resulted in the seizure of narcotics, United States currency, vehicles, and jewelry from individuals involved in narcotic trafficking.

1

3. I have aided and participated in investigations that have led to the issuance of numerous search warrants involving violations of both state and federal narcotic laws. These warrants involved the search of locations including residences of targets, their associates, and relatives, "stash houses" (houses used as drug/money storage locations), storage facilities, bank safe deposit boxes, cellular/camera phones, and computers. Evidence searched for and recovered in these locations has included controlled substances, records pertaining to the expenditures and profits realized there from, firearms, monetary instruments, and various assets that were purchased with the proceeds of drug trafficking.

4. More specifically, my training and experience include the following:

    a. I have used informants to investigate drug trafficking. Through informant interviews, and debriefings of individuals involved in drug trafficking, I have learned about the way individuals and organizations distribute controlled substances in Wisconsin;

    b. I have also relied upon informants to obtain controlled substances from dealers;

    c. I have experience conducting street surveillance of individuals engaged in drug trafficking. I have participated in the execution of numerous search warrants where controlled substances, drug paraphernalia, and drug trafficking records were seized;

    d. I am familiar with the appearance and street names of various drugs, including marijuana, heroin, fentanyl, cocaine, cocaine base, ecstasy, and methamphetamine. I am familiar with the methods used by drug dealers to package and prepare controlled substances for sale;

    e. I am familiar with the language used over the telephone to discuss drug trafficking, and know that the language is often limited, guarded, and coded;

    f. I know that drug traffickers often use electronic equipment and wireless and land line telephones to conduct drug trafficking

2

operations, including communicating regarding their trafficking activities with sources of supply and drug customers;

g. I know that drug traffickers commonly have in their possession, and at their residences and other locations where they exercise dominion and control, firearms, ammunition, and records or receipts pertaining to such;

h. I know that drug traffickers often put their telephones in nominee names to distance themselves from telephones that are used to facilitate drug trafficking; and

i. I know that drug traffickers often use drug proceeds to purchase assets such as vehicles, property, and jewelry. I also know that drug traffickers often use nominees to purchase and/or title these assets to avoid scrutiny from law enforcement officials.

## IDENTIFICATION OF THE DEVICES TO BE EXAMINED

5. The properties to be searched are described as follows:

a. a black iPhone with a black case, hereinafter identified as "**Target Telephone 1**".

b. a silver Celero 5G smartphone, hereinafter identified as **"Target Telephone 2"**.

**Target Telephone 1** and **Target Telephone 2** were lawfully seized after Deonte C. BROWNLOW (BROWNLOW) was traffic stopped, and cocaine and a firearm were located within BROWNLOW's vehicle. **Target Telephones 1** and **2** are currently located at Waukesha County Drug Task Force, located in Waukesha, Wisconsin.

6. The applied-for warrant would authorize the forensic examination of **Target Telephone 1** and **Target Telephone 2** for the purpose of identifying electronically stored data particularly described in Attachment B.

3

## PROBABLE CAUSE

### *June 27, 2024 Search Warrant*

7. On June 27, 2024, officers executed a search warrant at 6809 North 60th Street, Apt. 201, Milwaukee, Wisconsin (the "N. 60th Street apartment"). Carmen Purvis, Octavion Spencer, BROWNLOW, and a minor child were present at the N. 60th Street apartment during execution of the search warrant.

8. The kitchen of the N. 60th Street apartment did not have a refrigerator, microwave, or food. Most of the items located inside the living room and kitchen were narcotic or firearm related.

9. Based on their training and experience, officers believe that the N. 60th Street apartment was being maintained primarily as a drug trafficking place.

10. On June 27, 2024, the following items, among other things, were inside the N. 60th Street apartment:

11. In the kitchen were the following items:

    a.    In a trash container were one empty Mylar marijuana pound bag and one Mylar marijuana pound bag that contained miscellaneous kilogram wrappers. One of the kilogram wrappers contained approximately 1.44 grams of heroin residue and a second kilogram wrapper contained approximately 0.11 grams of cocaine residue.

    b.    Sixteen empty Mylar marijuana pound bags inside a box for an 86-inch television.

    c.    A money counter on the counter.

    d.    Three Mylar marijuana bags that contained a total of approximately 10.37 grams of marijuana.

4

e. A bowl, plate, and two bags that all contained cocaine residue. The combined weight from the bowl and plate was approximately 0.31 grams of cocaine residue.

f. One 8mg Suboxone sublingual strip.

g. Approximately 120 empty Mylar marijuana bags (3.5-ounce size).

h. Identifying documents for Octavion Spencer and Deonte BROWNLOW.

i. An open box of exam gloves and an N95 mask inside a kitchen cabinet.

j. Two N95 masks on the counter.

k. A blender bottom and bag that both contained cocaine residue.

l. One functional and three non-functional digital scales with cocaine residue.

m. Three razor blades with cocaine residue.

n. Two open boxes of baggies.

o. Seven empty prescription promethazine bottles.

p. A Magic Bullet brand blender and bags on the kitchen counter.

q. A blender, a plastic bag, and a Mylar bag on the floor.

r. A Spirit airline payment receipt for June 23, 2024.

s. Two baggies that had an unknown white substance (approximately 3.3 grams and approximately 4.45 grams) that did not test positive for heroin, cocaine, or fentanyl.

12. In the kitchen closet were the following items:

a. An AK drum-style firearm magazine.

b. A box for a RWB AK-47 100 round drum-style firearm magazine.

5

c. A box for a RWB .45 caliber, 40 round drum-style firearm magazine.

d. A box for a Glock firearm.

e. A .45 caliber drum-style firearm magazine.

f. Two handgun magazines.

g. Approximately 400 rounds of various types of ammunition.

13. In the living room were the following items:

a. On the armrest of a couch was a semi-automatic handgun with an empty extended magazine inserted.

b. On the floor near a couch was a semi-automatic handgun with wood foregrip loaded with 52 rounds of ammunition inside a magazine and one round of ammunition in the chamber as well as an empty extended magazine inserted.

c. On top of the coffee table were a Glock extended firearm magazine, a Glock speed loader, and a bag with an unknown white powder residue inside.

14. In the northeast bedroom were the following items:

a. Approximately $18,040.00 in United States currency that was scattered on the floor near the doorway.

b. One empty Mylar marijuana pound bag located on the floor.

15. In the northwest bedroom were the following items:

a. A gray backpack on the floor contained a Wisconsin identification card for Carmen Purvis and a black plastic grocery bag containing approximately $67,056.00 in United States currency. Near the backpack was green plastic wrapping that was identical to the kilogram wrapping found inside the marijuana pound bag that was located inside the kitchen trash container.

b. A blue cross-body bag that contained identifying documents for Octavion Spencer, approximately $138.00 in United States currency, and keys to the entry/exit door of the residence.

6

16. Denominations of the approximately $18,040.00 in United States currency were 7 $100 bills, 22-$50 bills, 769-$20 bills, and 86-$10 bills.

17. Denominations of the approximately $67,194.00 in United States currency were 313 $100 bills; 94-$50 bills; 1,546-$20 bills; 21-$10 bills; 3-$5 bills; and 49-$1 bills.

18. The approximately $18,040.00 and $67,194.00 in United States currency were the subject of a civil judicial complaint, filed in the Eastern District of Wisconsin. *See United States of America v. Approximately $67,194.00 in United States Currency and $18,040.00 in United States Currency*, 24-CV-1654. After notifying any interested parties, including BROWNLOW, no verified claims or answers were filed in this matter, and the government was granted default judgment on July 17, 2025.

19. Based on surveillance that was conducted before the search of 6809 North 60th Street, Apt. 201, Milwaukee, Wisconsin, the search itself, and evidence extracted from cell phone(s) seized after this search, law enforcement believes that Carmen Purvis, Octavion Spencer, BROWNLOW were working together to traffic controlled substances.

*October 28, 2025 Traffic Stop*

20. On October 28, 2025, the West Allis Police Department conducted a traffic stop and subsequently arrested BROWNLOW. On the day of the traffic stop and arrest, BROWNLOW was operating a Ford Bronco bearing New York registration LWR2796, hereafter to referred to as Target Vehicle. At approximately 7:25 p.m., law enforcement observed the Target Vehicle parked and running in the area of S. 58th Street and W. Mineral Street in the City of West Allis, Wisconsin. While conducting surveillance of the

7

Target Vehicle, law enforcement observed what appeared to be a drug transaction in an area known to law enforcement to be prevalent for drug trafficking activity. Law enforcement observed an unidentified male enter the rear passenger seat of the Target Vehicle. Approximately one to two minutes later, the officer observed the unidentified male exit the Target Vehicle. Shortly thereafter, the Target Vehicle departed the area and law enforcement followed. While following the Target Vehicle, law enforcement observed the Target Vehicle turn, without using a turn signal. Additionally, law enforcement observed the Target Vehicle fail to come to a complete stop at an intersection, which had a stop sign. Based on law enforcement's observations, law enforcement believed that the Target Vehicle was attempting to evade law enforcement. Shortly thereafter, law enforcement initiated a traffic stop.

21. After approaching the Target Vehicle, law enforcement detected an odor of marijuana emanating from the back seat of the vehicle. BROWNLOW was ordered to exit the vehicle, and he refused several commands to do so. BROWNLOW was subsequently forcibly removed from the vehicle and was detained by law enforcement. During a search of BROWNLOW, law enforcement located approximately $830.00 in U.S Currency and **Target Telephone 1** on BROWNLOW's person.

22. Due to the odor of marijuana emanating from the vehicle, law enforcement conducted a search of the vehicle. During the search of the vehicle, a black Taurus G2C 9mm handgun with an extended magazine located under the driver's seat. A 9mm round was loaded in the chamber and there were an additional 19 rounds of 9mm ammunition in the extended magazine. Located in the center console, law enforcement located **Target**

8

**Telephone 2.** Additionally, in the rear passenger seat, a black duffle bag was located. In the black duffle bag law enforcement observed what appeared to be an open box of empty plastic baggies with approximately 50-100 empty plastic baggies. Additionally, in the duffle bag was a plastic bag, which contained what appeared to be numerous bags of white rock-like substance, which law enforcement suspected of being crack cocaine, weighing approximately 7.89 grams. Law enforcement subsequently tested the suspected crack cocaine, utilizing a Nark II reagent modified field test, which had a presumptive positive result for the presence of crack cocaine.

23. Additionally, in the duffle bag law enforcement located one bag of white powdery substance, weighing approximately 14.06 grams, suspected to be cocaine. Law enforcement subsequently tested the suspected cocaine utilizing a Nark II reagent modified field test 07, which had a presumptive positive result for the presence of cocaine. Additionally, during the search of the vehicle, three credit cards were in the vehicle, and all three credit cards were listed to BROWNLOW.

24. Case agents are aware that it is common for drug traffickers to use cellular telephones in furtherance of their drug trafficking activities. Additionally, case agents are aware that drug traffickers commonly use more than one cellular telephone to help shield their identity and evade law enforcement detection.

25. Based on the foregoing, case agents believe there is probable cause to believe that **Target Telephone 1** and **Target Telephone 2** are likely to contain evidence of BROWNLOW's drug trafficking activities and unlawful use of firearms in furtherance of his drug trafficking.

9

26. On or about August 23, 2010, Deonte Brownlow pleaded guilty to a felony count in Milwaukee County Circuit Court, Case No. 10CF2635. Since on or about August 23, 2010, Deonte Brown has been, and remains, a convicted felon. As a convicted felon, Deonte Brownlow is prohibited from possessing a firearm.

27. **Target Telephone 1** and **Target Telephone 2** are currently in the lawful possession of the DEA. It came into DEA's possession pursuant to a traffic stop and arrest of BROWNLOW.

28. **Target Telephone 1** and **Target Telephone 2** are currently in storage at Waukesha County Drug Task Force, 1400 Northview Road Waukesha, Wisconsin. In my training and experience, I know that **Target Telephone 1** and **Target Telephone 2** have been stored in a way their contents are, to the extent material to this investigation, in substantially the same state as they were when **Target Telephone 1** and **Target Telephone 2** first came into the possession of the DEA/case agents.

<u>**TECHNICAL TERMS**</u>

29. Based on my training and experience, I use the following technical terms to convey the following meanings:

    a. Wireless telephone: A wireless telephone (or mobile telephone, or cellular telephone) is a handheld wireless device used for voice and data communication through radio signals. These telephones send signals through networks of transmitter/receivers, enabling communication with other wireless telephones or traditional "land line" telephones. A wireless telephone usually contains a "call log," which records the telephone number, date, and time of calls made to and from the phone. In addition to enabling voice communication, wireless telephones offer a broad range of capabilities. These capabilities include storing names and phone numbers in electronic "address books;" sending, receiving, and storing text messages and e-mail; taking, sending, receiving, and storing still photographs and

moving video; storing and playing back audio files; storing dates, appointments, and other information on personal calendars; and accessing and downloading information from the Internet. Wireless telephones may also include global positioning system ("GPS") technology for determining the location of the device.

b. Digital camera: A digital camera is a camera that records pictures as digital picture files, rather than by using photographic film. Digital cameras use a variety of fixed and removable storage media to store their recorded images. Images can usually be retrieved by connecting the camera to a computer or by connecting the removable storage medium to a separate reader. Removable storage media include various types of flash memory cards or miniature hard drives. Most digital cameras also include a screen for viewing the stored images. This storage media can contain any digital data, including data unrelated to photographs or videos.

c. Portable media player: A portable media player (or "MP3 Player" or iPod) is a handheld digital storage device designed primarily to store and play audio, video, or photographic files. However, a portable media player can also store other digital data. Some portable media players can use removable storage media. Removable storage media include various types of flash memory cards or miniature hard drives. This removable storage media can also store any digital data. Depending on the model, a portable media player may have the ability to store very large amounts of electronic data and may offer additional features such as a calendar, contact list, clock, or games.

d. GPS: A GPS navigation device uses the Global Positioning System to display its current location. It often contains records of the locations where it has been. Some GPS navigation devices can give a user driving or walking directions to another location. These devices can contain records of the addresses or locations involved in such navigation. The Global Positioning System (generally abbreviated "GPS") consists of 24 NAVSTAR satellites orbiting the Earth. Each satellite contains an extremely accurate clock. Each satellite repeatedly transmits by radio a mathematical representation of the current time, combined with a special sequence of numbers. These signals are sent by radio, using specifications that are publicly available. A GPS antenna on Earth can receive those signals. When a GPS antenna receives signals from at least four satellites, a computer connected to that antenna can mathematically calculate the antenna's latitude, longitude, and sometimes altitude with a high level of precision.

11

e. PDA: A personal digital assistant, or PDA, is a handheld electronic device used for storing data (such as names, addresses, appointments, or notes) and utilizing computer programs. Some PDAs also function as wireless communication devices and are used to access the Internet and send and receive e-mail. PDAs usually include a memory card or other removable storage media for storing data and a keyboard and/or touch screen for entering data. Removable storage media include various types of flash memory cards or miniature hard drives. This removable storage media can store any digital data. Most PDAs run computer software, giving them many of the same capabilities as personal computers. For example, PDA users can work with word-processing documents, spreadsheets, and presentations. PDAs may also include global positioning system ("GPS") technology for determining the location of the device.

f. Tablet: A tablet is a mobile computer, typically larger than a phone yet smaller than a notebook, that is primarily operated by touching the screen. Tablets function as wireless communication devices and can be used to access the Internet through cellular networks, 802.11 "wi-fi" networks, or otherwise. Tablets typically contain programs called apps, which, like programs on a personal computer, perform different functions and save data associated with those functions. Apps can, for example, permit accessing the Web, sending, and receiving e-mail, and participating in Internet social networks.

g. IP Address: An Internet Protocol address (or simply "IP address") is a unique numeric address used by computers on the Internet. An IP address is a series of four numbers, each in the range 0-255, separated by periods (e.g., 121.56.97.178). Every computer attached to the Internet computer must be assigned an IP address so that Internet traffic sent from and directed to that computer may be directed properly from its source to its destination. Most Internet service providers control a range of IP addresses. Some computers have static—that is, long-term—IP addresses, while other computers have dynamic—that is, frequently changed—IP addresses.

h. Internet: The Internet is a global network of computers and other electronic devices that communicate with each other. Due to the structure of the Internet, connections between devices on the Internet often cross state and international borders, even when the devices communicating with each other are in the same state.

30. Based on my training, experience, and research, I know that **Target Telephone 1** and **Target Telephone 2** have capabilities that allow them to serve as

12

wireless telephones, digital cameras, portable media players, GPS navigation devices, and PDAs.  In my training and experience, examining data stored on devices of this type can uncover, among other things, evidence that reveals or suggests who possessed or used the device.

## ELECTRONIC STORAGE AND FORENSIC ANALYSIS

31.     Based on my knowledge, training, and experience, I know that electronic devices can store information for long periods of time.  Similarly, things that have been viewed via the Internet are typically stored for some period on the device.  This information can sometimes be recovered with forensics tools.

32.     There is probable cause to believe that things that were once stored on **Target Telephone 1** and **Target Telephone 2** may still be stored there, for at least the following reasons:

    a.  Based on my knowledge, training, and experience, I know that computer files or remnants of such files can be recovered months or even years after they have been downloaded onto a storage medium, deleted, or viewed via the Internet.  Electronic files downloaded to a storage medium can be stored for years at little or no cost.  Even when files have been deleted, they can be recovered months or years later using forensic tools.  This is so because when a person "deletes" a file on a computer, the data contained in the file does not actually disappear; rather, that data remains on the storage medium until it is overwritten by new data.

    b.  Therefore, deleted files, or remnants of deleted files, may reside in free space or slack space—that is, in space on the storage medium that is not currently being used by an active file—for long periods of time before they are overwritten.  In addition, a computer's operating system may also keep a record of deleted data in a "swap" or "recovery" file.

    c.  Wholly apart from user-generated files, computer storage media—in particular, computers' internal hard drives—contain electronic evidence of how a computer has been used, what it has been used for, and who has

13

used it. To give a few examples, this forensic evidence can take the form of operating system configurations, artifacts from operating system or application operation, file system data structures, and virtual memory "swap" or paging files. Computer users typically do not erase or delete this evidence, because special software is typically required for that task. However, it is technically possible to delete this information.

d. Similarly, files that have been viewed via the Internet are sometimes automatically downloaded into a temporary Internet directory or "cache."

33. *Forensic evidence.* As further described in Attachment B, this application seeks permission to locate not only electronically stored information that might serve as direct evidence of the crimes described on the warrant, but also forensic evidence that establishes how **Target Telephone 1** and **Target Telephone 2** are used, the purpose of its use, who used it, and when. There is probable cause to believe that this forensic electronic evidence might be on **Target Telephone 1** and **Target Telephone 2** because:

a. Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file). Virtual memory paging systems can leave traces of information on the storage medium that show what tasks and processes were recently active. Web browsers, e-mail programs, and chat programs store configuration information on the storage medium that can reveal information such as online nicknames and passwords. Operating systems can record additional information, such as the attachment of peripherals, the attachment of USB flash storage devices or other external storage media, and the times the computer was in use. Computer file systems can record information about the dates files were created and the sequence in which they were created.

b. Forensic evidence on a device can also indicate who has used or controlled the device. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.

c. A person with appropriate familiarity with how an electronic device works may, after examining this forensic evidence in its proper context, be able to

14

draw conclusions about how electronic devices were used, the purpose of their use, who used them, and when.

d.  The process of identifying the exact electronically stored information on a storage medium that is necessary to draw an accurate conclusion is a dynamic process.  Electronic evidence is not always data that can be merely reviewed by a review team and passed along to investigators.  Whether data stored on a computer is evidence may depend on other information stored on the computer and the application of knowledge about how a computer behaves.  Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

e.  Further, in finding evidence of how a device was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium.

34.  *Nature of examination.*  Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit the examination of **Target Telephone 1** and **Target Telephone 2** consistent with the warrant.  The examination may require authorities to employ techniques, including but not limited to computer-assisted scans of the entire medium, that might expose many parts of the device to human inspection to determine whether it is evidence described by the warrant.

35.  *Manner of Execution.*  Because this warrant seeks only permission to examine a device already in law enforcement's possession, the execution of this warrant does not involve physical intrusion onto a premises.  Consequently, I submit there is reasonable cause for the Court to authorize execution of the warrant at any time in the day or night.

**CONCLUSION AND DELAYED NOTICE REQUEST**

36.  I submit that this affidavit supports probable cause for a search warrant authorizing the examination of **Target Telephone 1 and Target Telephone 2,** described in Attachment A to seek the items described in Attachment B.

15

37. This is part of an investigation relating to the distribution of illegal narcotics throughout the southeast Wisconsin area. This investigation aims to identify all the local members, any out of state members and the sources of supply of the controlled substances being brought into southeast Wisconsin. The investigation will continue until all appropriate law-enforcement investigative methods have been exhausted.

38. I further request, pursuant to 18 U.S.C. § 3103a(b) and Federal Rule of Criminal Procedure 41(f)(3), that the Court authorize the officer executing the warrant to delay notice until 180 days after the collection authorized by the warrant has been completed. This delay is justified because there is reasonable cause to believe that providing immediate notification of the warrant may have an adverse result, as defined in 18 U.S.C. § 2705. Providing immediate notice to the owner or user of **Target Telephone 1** and **Target Telephone 2** would seriously jeopardize the ongoing investigation, as such a disclosure would give that person an opportunity to destroy evidence, change patterns of behavior, notify confederates, and flee from prosecution. See 18 U.S.C. § 3103a(b)(1). There is reasonable necessity for the use of the technique described above, for the reasons set forth above. *See* 18 U.S.C. § 3103a(b)(2).

16

# <u>ATTACHMENT A</u>

The properties to be searched are described as follows:

a. a black iPhone in a black case, hereinafter identified as the "**Target Telephone 1**";

b. a silver Celero 5G smartphone, hereinafter identified as the **"Target Telephone 2"**.

**Target Telephone 1** and **Target Telephone 2** are currently located at Waukesha County Drug Task Force, 1400 Northview Road Waukesha, Wisconsin.

This warrant authorizes the forensic examination of **Target Telephone 1** and **Target Telephone 2** for the purpose of identifying the electronically stored information described in Attachment B.

1

**ATTACHMENT B**

1. All records on **Target Telephone 1** and **Target Telephone 2** are described in Attachment A that relate to violation of Title 21, United States Code, §§ 841(a)(1) (distribution of and possession with intent to distribute controlled substances) and 846 (conspiracy to distribute and possess with intent to distribute controlled substances), and violations of Title 18, United States Code, § 924(c) (Possession of a Firearm in Furtherance of Drug Trafficking), and involve BROWNLOW, since January 2024, including, but not limited to:

   a. lists of customers and related identifying information;

   b. types, amounts, and prices of drugs trafficked as well as dates, places, and amounts of specific transactions;

   c. any information related to co-conspirators and sources of drugs and firearms (including names, addresses, phone numbers, or any other identifying information);

   d. any information recording schedule or travel;

   e. all bank records, checks, credit card bills, account information, and other financial records;

   f. Photographs and/or videos depicting possession of drugs and/or firearms;

   g. Any evidence related to either the ownership, purchase, or possession of drugs and/or firearms;

1

h. Records of Internet activity, including browser history, search terms that the user entered into any Internet search engine, and records of user-typed web addresses; and

i. All data, communications, information, and records, in whatever form, have any tendency to establish the actual or intended physical location of its user, or that of any of their associates involved in criminal activity, as well as the physical location of **Target Telephone 1** and **Target Telephone 2**;

2. Evidence of user attribution showing who used or owned **Target Telephone 1** and **Target Telephone 2** at the time the things described in this warrant were created, edited, or deleted, such as logs, phonebooks, saved usernames and passwords, documents, and browsing history;

As used above, the terms "records" and "information" include all of the foregoing items of evidence in whatever form and by whatever means they may have been created or stored, including any form of computer or electronic storage (such as flash memory or other media that can store data) and any photographic form.

2